**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**BRENDA SPRATLEY**                                                  **PLAINTIFF**

**VS.**                             **CIVIL ACTION NO.: 1:07CV-1264 -HSO-JMR**

**MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY**                   **DEFENDANT**
_____

**REPORT & RECOMMENDATION**
_____

This matter is before the Court pursuant to a Motion [8-1] for Judgment on the Pleadings filed by the Plaintiff, Brenda Spratley (hereinafter referred to as "Spratley"), which was accompanied by a Memorandum [9-1] in Support thereof. Defendant, Michael J. Astrue, (hereinafter referred to as "the Commissioner") filed a Response [10-1] in Opposition, which was accompanied by a Memorandum [11-1] in Opposition. Having considered the pleadings, the record of proceedings below, along with the record as a whole and the relevant law, the Court finds that the Commissioner's decision should be vacated and remanded.

**STATEMENT OF THE CASE:**

This is an action under section 205(g) of the Social Security Act (Act), 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Spratley's claims for Disability Insurance Benefits (DIB).

**ADMINISTRATIVE PROCEEDINGS:**

Spratley filed her claim for Social Security disability insurance benefits on November 9, 2004. (Transcript of the Administrative Record, hereinafter "Tr.," 57). Spratley alleged an inability to work beginning on August 23, 2003. (Tr. 63). The Commissioner denied her claims on March

22, 2005. (Tr. 37). Spratley entered a request for reconsideration on April 10, 2005, which was subsequently denied on April 26, 2005. (Tr. 42). Williams requested and was granted an administrative hearing before an Administrative Law Judge ("ALJ"). (Tr. 49). The ALJ issued an unfavorable decision on September 15, 2006. (Tr. 21-27). The Appeals Council denied Plaintiff's request for review of the ALJ's decision, thus making the determination the "final decision" of the Commissioner. (Tr. 6-10). On December 18, 2007, Plaintiff filed the instant action for judicial review pursuant to 42 U.S.C. § 405(g) of the Social Security Act.

### **FACTS:**

Spratley was 52 years old at the time when the ALJ denied her application for DIB. (Tr. 57). She obtained a graduate equivalency degree in 2004. (Tr. 79) Her previous work experience included lounge manager, factory laborer, and a miller in the optics industry. (Tr. 75). Spratley was last employed in August 2003. (Tr. 57). However, she remains insured for purposes of the Title II disability insurance program through 2008. (Tr. 63).

Spratley suffers from cervical neck and spinal problems that first manifested as left wrist pain and numbness in April 2001. Spratley's physician, Dr. Summers, diagnosed her with possible carpal tunnel syndrome, hypothyroidism, and obesity. (Tr. 148). This diagnosis was later changed to morbid obesity and non-insulin dependent diabetes. (Tr. 146). Spratley was later referred to Dr. Kim for gastric bypass surgery, which was performed between April and May of 2002. (Tr. 139-45). While Spratley recovered from the gastric bypass, she eventually gained back much of her weight. (Tr. 464).

In late 2002, Spratley complained to Dr. Summers of back pain and left shoulder pain. (Tr. 134). On May 1, 2003, Spratley consulted Dr. Summers again for "left neck pain that radiates to left shoulder pain under left scapula, then itches & becomes numb." (Tr. 131). Pursuant to Dr.

Summers' recommendations, an MRI was performed on May 12, 2003, which revealed "[t]he combination of prominent osteophytes[1] and disc protrusions . . . centrally at C3-C4, causing complete effacement of the ventral thecal sac and flattening of the ventral aspect of the [spinal] cord. Neural canal stenosis[2] is also noted at all of these levels." (Tr. 207).

Dr. Summers referred Spratley to Dr. Winters for follow-up regarding the results of her MRI. (Tr. 274). Dr. Winters noted cervical spinal stenosis[3] at C-3, C-4, C-5, C-6, and C-7 with spondylitic[4] changes at both levels. (Tr. 274). Dr. Winters first recommended epidural steroid injections. (Tr. 275). However, Spratley continued to complain of persistent neck pain radiating into her arms. (Tr. 272). Dr. Winters then referred Spratley to Dr. Graham for surgical consideration. *Id.*

Spratley's initial consultation with Dr. Graham occurred on August 19, 2003, and he noted that she suffered from "extensive cervical spondylosis from C-3 to C-6, C-7. Every level is involved and it is quite severe. She has less than 9mm of space available for the cord." (Tr. 292). Spratley was offered the surgical option of a multilevel cervical corpectomy[5] and fibular strut fusion. *Id.* Spratley elected to have surgery, and it was performed at the Ocean Springs Hospital on September 8, 2003.

---

[1] Osteophytes, or bone spurs, are smooth, bony growths that form over time. *See* http://www.csmc.edu/5763.html

[2] A stenosis is an abnormal narrowing in a tubular organ or structure. *See* http://en.wikipedia.org/wiki/Stenosis

[3] Spinal stenosis is a medical condition in which the spinal canal narrows and compresses the spinal cord and nerves. *See* http://en.wikipedia.org/wiki/Spinal_stenosis

[4] Spondylosis refers to a degenerative arthritis or osteoarthritis of the spinal vertebrae and related tissue. *See* http://en.wikipedia.org/wiki/Spondylosis

[5] A corpectomy is a surgical procedure that involves removing part of the vertebral body in order to decompress the spinal cord and nerves. *See* http://en.wikipedia.org/wiki/Corpectomy

(Tr. 308). Dr. Graham diagnosed Spratley with "severe cervical myeloradiculopathy.[6]" *Id.*

Although Spratley initially indicated that the surgery alleviated some of her pain, she began to renew her complaints of neck pain approximately two months after the procedure. (Tr. 281). Dr. Graham prescribed trigger point injections, and recommended that Spratley alter her activity level according to her symptoms. (Tr. 282). On December 18, 2003, Spratley returned to Dr. Graham to request his permission to return to work. (Tr. 276). On January 5, 2004, Dr. Graham returned her to light duty work with limited bending, climbing, and overhead work. (Tr. 297). When Spratley returned to her employer with her light duty slip, she was terminated. (Tr. 476).

Because of her unemployed status, Spratley began to seek medical treatment at free medical clinics in and around Biloxi, Mississippi. (Tr. 508). Spratley was seen in the emergency room of Ocean Springs Hospital on November 17, 2004, and she complained of persistent pain in her neck, shoulders and arms. (Tr. 369).

Spratley was later referred by her Social Security examiner to general practitioner, Dr. Terry Ellis, on February 22, 2005. (Tr. 323-24). Spratley informed Dr. Ellis that she was experiencing neck pain that radiated into her shoulders and arms. *Id.* Dr. Ellis noted that Spratley had limitation of motion in her neck, specifically noting that her range of motion of both lateral flexion and rotation was limited. (Tr. 324).

On September 14, 2005, Spratley was seen at Singing River Services by Dr. Walker, who diagnosed Spratley with Major Depressive Disorder. (Tr. 401). Spratley returned to Singing River on several occasions to receive medication for her depression. (Tr. 122-23, 397-412).

On September 26, 2005, Spratley was examined by Dr. Bonnie Lohrbach of the Coastal

---

[6] Myeloradiculopathy is defined as a disease of the spinal cord and spinal nerve roots. *See* http://medical-dictionary.thefreedictionary.com/myeloradiculopathy

Family Health Center. (Tr. 365-66). Spratley reported neck pain accompanied with numbness in her hands. *Id.* Dr. Lohrbach scheduled Spratley for an MRI of her cervical spine on October 17, 2005. (Tr. 414). The MRI results indicated that Spratley had, at levels C-6 and C-7, uncinate process[7] hypertrophy[8] and central disc osteophyte complex resulting in spinal canal narrowing, flattening of the spinal cord and bilateral neural foraminal narrowing. *Id.* Dr. Lohrbach referred Spratley to the University Medical Center ("UMC") in Jackson, Mississippi. (Tr. 364). On November 7, 2005, Spratley returned to the Coastal Family Health Center to request assistance in scheduling a neurosurgical consultation at UMC. (Tr. 360-63).

Spratley saw a neurosurgeon at UMC on February 13, 2006. The neurosurgeon noted that Spratley complained of pain and numbness throughout her upper extremities. Spratley was diagnosed as suffering from chronic myelopathy and referred to pain management. (Tr. 355-56). Spratley saw a therapist at UMC on March 6, 2006. The therapist noted that Spratley complained of constant, severe pain, and an examination revealed that her cervical range of motion was limited in all directions. (Tr. 349-50). Spratley was instructed on how to use a TENS unit and taught several stretches and exercises that she could perform at home. *Id.* On March 23, 2006, Spratley was given a epidural steroid injection. (Tr. 343-47).

On April 6, 2006, Spratley returned to UMC complaining of severe pain in her neck. She also reported that the cervical epidural steroids were having adverse effects on her kidneys. The pain management physician that examined Spratley recommended that she receive Neurontin at the Coastal Family Health Center. (Tr. 341). He also noted that Spratley's MRI showed flattening of

---

[7] An uncinate process is a part of a spinal vertebra. It is a hook shaped process on the side edges of the top surface of the vertebral bodies of the C-3 to the C-6 vertebrae. *See* http://en.wikipedia.org/wiki/Uncinate_process

[8] Hypertrophy is the increase of the size of an organ or in a select area of tissue. See http://en.wikipedia.org/wiki/Hypertrophy

the spinal cord, and he diagnosed her as suffering from failed cervical spinal surgery. *Id.* Spratley was seen again at the UMC pain management clinic on August 17, 2006, where Dr. Tafor opined that she was suffering from failed cervical spine surgery syndrome. He scheduled her for pain medication and treatments of trigger point injections. (Tr. 453-55).

Following the ALJ's unfavorable decision, Spratley obtained a Functional Capacity Evaluation ("FCE") by physical therapist, Sylvia McCandless, on January 9, 2007. (Tr. 457-69). The results indicated that Spratley suffered a limited range of motion in both the cervical and lumbar regions of her spine, she had weakness in her quadriceps and trunk, limited abduction in her right shoulder, below average hand coordination, and low average to below average grip strength in her hands. (Tr. 459).

On June 28, 2007, Spratley underwent further testing at UMC. (Tr. 480-83). The MRI results state there was little overall change from her October 2005 MRI, but the study did indicate flattening of the spinal cord. (Tr. 470).

## **STANDARD OF REVIEW**:

On review, the ALJ's determination that a Spratley is not disabled will be upheld if the findings of fact upon which it is based are supported by substantial evidence on the record as a whole, and it was reached through the application of proper legal standards. 42 U.S.C. § 405(g); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). The United States Supreme Court defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," being "more than a scintilla, but less than a preponderance." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

All evidentiary conflicts are resolved by the Commissioner, and if substantial evidence is found to support the decision, then the decision is conclusive and must be affirmed, even if there is

evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). On appeal, the court may not re-weigh the evidence, try the case *de novo*, nor substitute its own judgment for that of the Commissioner, *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988), even if it finds the evidence preponderates against the decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

## ANALYSIS:

Spratley's hearing before the ALJ took place on August 22, 2006, in Hattiesburg, Mississippi. (Tr. 485). Applying the five-step evaluation process, *see* 20 C.F.R. § § 404.1520 & 416.920, at step one the ALJ found that Spratley had not engaged in any substantial gainful activity at any time since August 23, 2003. (Tr. 23). At step two, the ALJ found that Spratley's degenerative disc disease, partial neck fusion, depression, and osteoarthritis constituted severe impairments. *Id*. At step three, however, the ALJ determined that none of these impairments, or combination thereof, met or medically equaled any impairment in the Listing of Impairments. (Tr. 24). Next, the ALJ assessed Spratley's Residual Functional Capacity ("RFC") and found that she was capable of performing light work[9] with slight to moderate pain. (Tr. 24-25). At step four, the ALJ found that Spratley was unable to perform any past relevant work. (Tr. 25). However, upon considering Spratley's age, education, work experience, and RFC, the ALJ concluded that jobs exist in significant numbers in the national economy that Spratley can perform. (Tr. 26). Accordingly, the ALJ determined that Spratley was not under a "disability" as defined in the Social Security Act from August 23, 2003, through September 15, 2006, the date of the decision. (Tr. 26).

---

[9] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. §§ 404.1567(b), 416.967(b). Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing or pulling of arm or leg controls. *Id.* "The full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time." Social Security Ruling (SSR) 83-10.

Spratley contends that the ALJ should have never proceeded beyond step three of the sequential evaluation process. Instead, Spratley argues that she was entitled to a finding that she was disabled based solely upon medical considerations because her impairments meet or equal an impairment in the Listing of Impairments. Specifically, Spratley claims that her spinal disorder is equivalent to the impairment set forth at Listing 1.04A, 20 C.F.R. Part 404, Subpart P, Appendix 1 (2006). Additionally, in the advent that her spinal impairments, standing alone, do not meet the requirements of Listing 1.04A, Spratley alternatively argues that her condition, when combined with her other medical conditions, meets or equals Listing 1.04A.

The Listing of Impairments describes conditions and impairments that are sufficiently severe as to prevent an individual from engaging in gainful activity. *See* 20 C.F.R. § 416.925(a). The listings are divided in to two parts: an introduction, followed by a specific listing. § 416.925(c)(1). The introduction contains common impairments within a particular body system and definitions used in the listings for that body system. § 416.925(c)(2). The listings that follow the introduction in each body system specify the objective medical evidence and other findings needed to satisfy the criteria of that listing. § 416.925(c)(3). An impairment meets the requirements of a listing when it satisfies all the criteria of that listing. *Id.*

An individual can establish *per se* disability if she can show her impairments meet or equal any impairment found at the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. *See Sullivan v. Zebley*, 493 U.S. 521, 532 (1990); *Bowen v. City of N.Y.*, 476 U.S. 467, 471 (1986). However, the listings are more restrictive than the statutory standard, as they often exclude claimants who have unlisted impairments or combinations of impairments that do not satisfy all of the criteria of any one listed impairment. *See Zebley*, 493 U.S. at 534. "For a claimant to show that his impairment matches a listing, *it must meet all of the specified medical criteria.* An impairment that

manifests only some of those criteria, no matter how severely, does not qualify." *Id.* at 531 (emphasis added). A claimant must provide objective medical evidence that supports or satisfies each of the criteria for the listed impairment. *See Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990). The claimant's task is an unenviable one, as "[t]he criteria in the medical listings are demanding and stringent . . . ." *Falco v. Shalala*, 27 F.3d 160, 162 (1994).

Spratley contends that her spinal condition meets or equals the diagnostic criteria of Listing 1.04, 20 C.F.R. Part 404, Subpart P, Appendix 1 (2006), which provides, in pertinent part:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulpous, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

Thus, in order to qualify as "disabled" within the meaning of the Social Security Act, Spratley was required to provide objective medical evidence demonstrating that she satisfies all of the individual criteria under the listing.

At step three in the sequential analysis, the ALJ summarily concluded that:

> [t]he claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). The Administrative Law Judge considered whether her impairments met or equaled the applicable listing. After reviewing the criteria of the listing, the claimant's impairments do not meet or equal a listing.

(Tr. 24). The ALJ did not identify the listed impairment for which Spratley's impairments failed to qualify, nor did the ALJ provide any explanation as to how she reached her conclusion that

Spratley's impairments did not meet or equal a listed impairment.  Under the circumstances, this Court finds that "'[s]uch a bare conclusion is beyond meaningful judicial review.'" *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).

The Social Security Act clearly sets forth the Commissioner's duties as the finder of fact. The Act provides that:

> [t]he Commissioner of Social Security is directed to make any findings of fact and decisions as to the rights of any individual applying for a payment under this subchapter.  Any such decision by the Commissioner . . . which involves a determination of disability and which is in whole or in part unfavorable to such individual **shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence**, **and stating the Commissioner's determination and the reason or reasons upon which it is based**.

42 U.S.C. § 405(b)(1) (emphasis added).  As mandated by the statute, the Commissioner was required to discuss the evidence in support of Spratley's claim for disability and to explain the reasons why Spratley was determined not to be disabled at that step.  Although the ALJ is not required to engage in an exhaustive analysis of the evidence in the record, in the present instance, the ALJ failed to provide *any* evidence to support the conclusion that Spratley does not meet or equal a listed impairment.  Accordingly, this Court is simply unable to determine whether the ALJ's decision is based upon substantial evidence.  *See Audler*, 501 F.3d at 448.

Although the ALJ erred in failing to state a reason or reasons for the unfavorable determination at step three, the Court must determine whether the ALJ's error was harmless under the circumstances.  *See Morris v. Bowen*, 864 F.2d 333, 334 (5th Cir. 1988).  A procedural error is harmless so long as it does not affect the substantial rights of a party.  *See Audler*, 501 F.3d at 448. Thus, Spratley must establish that the ALJ's error casts into doubt the existence of substantial

evidence to support the ALJ's decision. *See Morris*, 864 F.2d at 335.

Spratley contends that her disability meets the criteria of Listing 1.04A 20 C.F.R. Part 404, Subpart P, Appendix 1, which requires "evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, [and] motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss . . . ." The record is clear that Spratley's spinal disorder was characterized by nerve root compression. Spratley submitted the records of her 2003 MRI which revealed that Spratley suffered from spinal stenosis. (Tr. 207). Additionally, Dr. Graham confirmed that Spratley suffered from compression of the spinal cord and noted that, although she was a candidate for surgery, "complete discectomies were not possible due to the severe compression. (Tr. 309). Finally, both Spratley's 2005 and 2007 MRIs revealed flattening of the spinal cord. (Tr.414, 470). Furthermore, Spratley submitted medical records indicating that her condition is marked by "neuro-anatomic distribution of pain," as several physicians noted that Spratley suffered from neck pain that radiated into her shoulders and arms and caused numbness in her upper extremities. (Tr. 131, 148, 323, 356, 366).

Spratley also provided objective medical evidence that her condition is marked by limitation of motion of the spine. In 2005, Dr. Ellis noted that Spratley had limitation of motion in her neck. He specifically noted that her range of motion of both lateral flexion and rotation was limited. (Tr. 324). Furthermore, during a 2006 examination at UMC, a physical therapist noted that Spratley's cervical range of motion was limited in almost all directions. (Tr. 349-350). Finally, Spratley's Function Capacity Examination revealed that Spratley suffered from a limitation of motion in her cervical spine. (Tr. 459).

The final criteria of Listing 1.04A requires "motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss." As evidence of motor loss,

Spratley submits the medical records pertaining to Dr. Graham's physical examination. Dr. Graham stated that Spratley exhibited the early signs of "disdiadochokinesia."[10] (Tr. 292). Furthermore, Dr. Graham's operative report described Spratley as suffering "severe cervical myeloradiculopathy[11]." (Tr. 308). Additionally, both Spratley and her sister, Darlene Kittell, testified at the ALJ hearing that Spratley has difficulty grasping objects because of weakness and tingling in her hands. (Tr. 524-28). Furthermore, Spratley submitted the results of a Functional Capacity Evaluation which was performed in January of 2007, and which indicated that Spratley was limited by below- average fine hand coordination and below-average grip strength in her right hand.[12] (Tr. 459).

In addition to motor loss, Spratley submitted medical evidence tending to establish that her condition is marked by sensory loss and reflex abnormalities as well. For instance, the medical records demonstrate that Spratley repeatedly complained of numbness and tingling in her extremities following her surgical operation. (Tr. 453-55). Furthermore, she testified at the ALJ hearing that she cannot drive long distances because her arms go numb. (Tr. 511). Additionally, Dr. Graham's medical records indicate that Spratley suffered from "hyperflexia[13]" in her biceps, brachoradialis, and triceps. (Tr. 200). Finally, Spratley's Functional Capacity Evaluation revealed that she still exhibited hyperflexia in her upper extremities. (Tr. 467).

---

[10] Disdiadochokinesia is defined as the inability to make finely coordinated movements of a part in opposite directions, as when quickly supinating and pronating the hand. *See* http://www.kneelsit.com/glossary/glossary2.html

[11] Radiculopathy is frequently characterized by pain, and other symptoms like numbness, tingling, and weakness in the arms and legs that are caused by a problem with a nerve root.
*See* http://www.back.com/symptoms-radiculopathy.html

[12] The results of Spratley's Functional Capacity Evaluation were acquired after the ALJ's decision, but were submitted to the Appeals Council. Accordingly, the Court considers the records as part of the final decision. *See Higginbotham v. Barnhart*, 405 F.3d 332 (5th Cir. 2005).

[13] Hyperflexia is defined as overactive or overresponsive reflexes, which can include twitching or spastic tendencies. The most common cause of hyperflexia is spinal cord injury.
*See* http://en.wikipedia.org/wiki/Hyperreflexia

After reviewing the medical evidence in the record, the Court finds that Spratley has presented evidence which corresponds to all of the requisite criteria under Listing 1.04A. Therefore, absent a contrary explanation by the ALJ, Spratley appears to have met her burden of demonstrating that she meets or medically equals the criteria of Listing 1.04A.   As a result, the Court finds that Spratley's substantial rights were affected by the ALJ's failure to explain the conclusion that Spratley does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.   Because the Court finds that the ALJ erred at step three, we need not address Spratley's additional argument.

## **CONCLUSION**

The Court has fully reviewed the entire record on this matter and finds that ALJ erred in failing to explain the conclusion that Spratley does not have an impairment or combination of impairments that meets or medically equals an impairment in the Listing of Impairments. Accordingly, the Court recommends that the ALJ's decision be vacated and remanded for additional proceedings and an explanation regarding the previous finding at step three.

In accordance with the Rules of this Court, any party within ten days after being served a copy of this recommendation, may serve and file written objection to the recommendations, with a copy to the Judge, the U.S. Magistrate Judge and the opposing party. The District Judge at that time may accept, reject or modify in whole or in part, the recommendation of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. Failure to timely file written objections to proposed findings, conclusions, and recommendations contained in this report will bar an aggrieved party, except on the grounds of plain error, from attacking on appeal- unobjected to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Services Automobile Association*, 79 F.3d 1425 (5th Cir. 1996).

THIS the  20th  day of November, 2008.

                                                    s/ JOHN M. ROPER
                                CHIEF UNITED STATES MAGISTRATE JUDGE